IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JOHN ANDREW KISTER, #264274, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CASE NO. 2:21-CV-196-MHT-CSC ) |
| MR. TURNER, | ) ) |
| Defendant. | ) ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.    INTRODUCTION**

Plaintiff John Andrew Kister, an inmate proceeding *pro se*, filed this 42 U.S.C. § 1983 action alleging he received inadequate psychotherapy during his incarceration in the Residential Treatment Unit ("RTU") at Bullock Correctional Facility. Doc. 1. Although the Complaint does not explicitly assert a legal claim, Plaintiff appears to believe this inadequate treatment violated his Eighth Amendment right against cruel and unusual punishment. As relief, he seeks $6,000 in monetary damages and "psychotherapy every 2 weeks." *Id*. at 7.

The Complaint names Mr. Turner as a defendant (*Id*. at 1, 2), who is later identified as Kenton Turner, the RTU/Stabilization Unit Coordinator at Bullock (Doc. 11 at 1, 2). On April 5, 2021, the Court issued an Order directing Defendant to file a Special Report addressing Plaintiff's claims. Doc. 6. On April 15, 2021, Defendant filed his Special Report (Doc. 11), in which he moves for summary judgment and provides

supporting evidentiary materials (Docs. 11-1, 11-2). Thereafter, on Plaintiff's motion, Defendant filed additional evidentiary materials. Docs. 18-1, 18-2.

The Court issued another Order directing Plaintiff to respond to Defendant's filings with affidavits or statements made under penalty of perjury and other evidentiary materials. Doc. 12. Plaintiff then filed responsive documents entitled Brief in Support of Complaint (Doc. 14) and Response to Special Report of Kenton Turner (Doc. 15), which includes supporting evidentiary materials (Docs. 15-1, 15-2), as well as a response to Defendant's additional evidentiary materials (Doc. 19).

In its Order directing a response from Plaintiff, the Court notified the parties that, absent any objections, it may thereafter treat Defendant's Special Report and Plaintiff's response as a motion for summary judgment and response. Doc. 12 at 2–3. No objections were filed. Thus, the undersigned will now construe Defendant's Special Report as a motion for summary judgment and, for the reasons set forth below, RECOMMEND that judgment be GRANTED in favor of Defendant.

## II.  SUMMARY JUDGMENT STANDARD

Under Rule 56 of the Federal Rules of Civil Procedure, a reviewing court must grant a motion for "summary judgment if the movant shows that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48

(1986). "An issue of fact is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson*, 477 U.S. at 248). "An issue is 'material' if it might affect the outcome of the case under the governing law." *Id.*

The party seeking summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). The movant can meet this burden by presenting evidence showing there is no dispute of material fact or by showing that the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Id.* at 322–23.

Once the movant has satisfied this burden, the nonmoving party must "go beyond the pleadings and by [his] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324. In doing so, and to avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The parties must support their assertions "that a fact cannot be or is genuinely disputed" by "citing to particular parts of materials in the record, including

3

depositions, documents, electronically stored information, affidavits or declarations, stipulations[], admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A)–(B).

If the nonmovant "fails to properly address another party's assertion of fact as required by Rule 56(c)," then the Court may "consider the fact undisputed for purposes of the motion" and "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(2)–(3).

"In reviewing whether the nonmoving party has met its burden, the [C]ourt must stop short of weighing the evidence and making credibility determinations of the truth of the matter." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998–99 (11th Cir. 1992) (citation omitted). "Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 999 (citations and internal quotations omitted). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (citation omitted). Furthermore, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990); *see also Anderson*, 477 U.S. at 249–50 ("If the

evidence [on which the nonmoving party relies] is merely colorable, or is not significantly probative, summary judgment may be granted.") (internal citations omitted).

## III. RELEVANT FACTS[1]

The following facts derive from Plaintiff's verified Complaint (Doc. 1) and declaration attached thereto (Doc. 1-1), the sworn evidentiary materials proffered by Defendant (Docs. 11-1, 11-2, 18-1, 18-2), and Plaintiff's verified filings in response (Docs. 15-1, 15-2). Although Plaintiff filed additional responsive filings (Docs. 14, 15, 19), the Court cannot consider any allegations therein in deciding summary judgment because they are neither sworn nor verified in accordance with 28 U.S.C. § 1746.[2]

Plaintiff's Complaint, executed on February 16, 2021, contains the following factual allegations in their entirety:

1. I transferred to the [RTU] at [Bullock] July 20, 2020.
2. I was assigned a counselor—Mr. Aikens.
3. He saw me every two weeks for 1 on 1 psychotherapy.
4. Mr. Aikens stopped working [at Bullock] around December 2020.
5. I have not seen a counselor since.
6. I have Bipolar II, and a part of the standard treatment is psychotherapy.
7. I have several issues with my mental illnesses.
8. Going weeks with no counseling has harmed me; I feel I have regressed.

---

[1] The "facts" set forth herein are merely for purposes of resolving summary judgment and may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1400 (11th Cir.), *opinion modified on reh'g*, 30 F.3d 1347 (11th Cir. 1994) ("[W]hat we state as 'facts' … for purposes of reviewing the rulings on the summary judgment motion [] may not be the actual facts.").

[2] *See, e.g., Roy v. Ivy*, 53 F.4th 1338, 1347 (11th Cir. 2022) ("Unsworn statements may not be considered by a district court in evaluating a motion for summary judgment.") (citing *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n. 26 (11th Cir. 2003)); *McCaskill v. Ray*, 279 F. App'x 913, 915 (11th Cir. 2008) (holding that district court should not have considered unsworn and unverified allegation in deciding summary judgment).

> 9.  I feel worthless and hopeless, that I do not deserve adequate treatment for my mental illness.

Doc. 1 at 6. His declaration attached to the Complaint further provides that he "need[s] regular psychotherapy to talk about [his] issues"; "[w]hen [his] initially assigned counselor left [Bullock], no one took his place"; he has "gone weeks without any psychotherapy"; he feels as though he has "regressed on [his] issues" and "been lost and forgotten"; and "[i]t is like [he is] literally begging for help with no one caring." Doc. 1-1 at 1–2.

In response, Defendant provides evidence that he is not responsible for and has no control over Plaintiff's mental health treatment and that he has at no time seen or evaluated Plaintiff for his mental health needs. Doc. 11-1 at 3. He further provides Plaintiff's medical records, which demonstrate the following:

Plaintiff's last individual therapy session with Mr. Aikens took place in November 2020. Doc. 18-2.

On December 15, 2020, Plaintiff was seen by a mental health professional in activity therapy. Docs. 11-1 at 4; 11-2 at 4.

On December 17, 2020, Plaintiff was evaluated by a mental health professional, who updated Plaintiff's mental health treatment plan and noted:

> [Patient] reported feelings of depression that are affecting his daily functioning. In six months[,] [patient] will learn better coping skills that help to handle life's pressures more effectively. Verbalize an understanding of the signs of the [diagnosis] and [treatment] of depressive [symptoms]. Use CST to teach [patient] the signs, [symptoms] and [treatment] of depression (medication and therapeutic techniques).

Docs. 11-1 at 3; 11-2 at 3.

On February 18, 2021, Plaintiff was evaluated by a mental health nurse practitioner, who noted:

> Seen: 0900–0910 hours. Mr. Kister continues to endorse paranoia and poor concentration. His mood is depressed (feeling down, loss of interest, trouble sleeping, low energy level, and trouble concentrating), with a flat affect. He is now sleeping too much and continued nightmares. He denies any substance abuse.
>
> Risk: [L]ow. Safety: [L]ow. Continue on RTU. Continue Abilify and Buspar at current dose. Increase Lexapro to 20 mg PO at noon for depressive symptoms. Decrease Benadryl to 25 mg PO at noon and 50 mg PO QHS due to daytime drowsiness. Increase Minipress to 2 mg PO QHS for nightmares. Continue individual and group therapies.

Docs. 11-1 at 4; 11-2 at 5.

That same day, Plaintiff was seen in a mental health group participation session, during which he "engaged well and understood that he must know his level" and reported no problems. Docs. 11-1 at 4; Doc. 11-2 at 6.

On February 22, 2021, Plaintiff attended another mental health group session. Docs. 11-1 at 4; 11-2 at 8.

On February 23, 2021, Plaintiff received individual mental health counseling. Doc. 11-1 at 5; 11-2 at 9. Notes from that visit state in relevant part:

> 02/23/21 Individual counseling note
>
> Confidential Setting/RTU Office next to shift office
>
> DX) Bipolar II
>
> S) "I am horrible and nothing is going well." Patient states "severe homicidal thoughts" and "I dream about killing." Patient reports that he has suppressed anger over the sentence he received and that he has been incarcerated since 2015.

> O) This patient is a white male oriented x 4. He made direct eye contact and his speech is clear and coherent. He appears to be experiencing moderate depression and he is manic today. He is cooperative. He has poor coping skills and his thoughts are homicidal.
>
> A) Patient presented to individual counseling and he has been feeling neglected by the counselors.[] MHP talked with patient about using positive coping skills in addition to him continuing on his medications to improve his mood. He agreed to use positive self-talk and cognitive reframing to reduce his oppressive and homicidal thoughts. Inmate Kister asked to be placed in groups and particularly a depression group. This patient reported that he has been compliant on meds and during his last visit with CRNP Shelton[,] he was added on Lexapro. He was able to get to the law library last Saturday and this morning. Patient's mood improved during our session and MHP informed him that she would see him at least monthly until his new counselor is assigned. Inmate did report that he has 16 lawsuits out with the prison system.
>
> P) Patient will be scheduled for individual counseling monthly. MHP will schedule patient for new groups starting by 02/25/21 with Activity tech. Inmate will continue to take his meds a[s] prescribed and will continue to see provider monthly for medication evaluation. MHP will continue to monitor patient for changes and progress.

Docs. 11-1 at 5–6; 11-2 at 9.

On February 24, 2021, Plaintiff met with his mental health treatment team. Docs. 11-1 at 6; 11-2 at 10. Notes from that visit state:

> 02/24/21 Treatment Plan Review Note/Confidential Setting in the Office.
>
> LMHP reviewed the current [treatment] plan. The goals and objectives were discussed and his role in treatment.[]
>
> [Patient] did sign his treatment plan. His treatment plan will be reviewed in one month to check progress. The attendees of the treatment team were the CRNP, QMHP, MH Nurse, ADOC Officer and Patient. The treatment team was chaired by the MHP. This, meeting was done in a confidential setting in RTU. [Patient] felt much better today than he did . . . yesterday. LMHP has referred him to some groups.

Docs. 11-1 at 6; 11-2 at 10.

On February 25, 2021, Plaintiff participated in another mental health group participation session, during which he was "alert and very active in group discussion" with "[n]o problems to report." Docs. 11-1 at 6; 11-2 at 13.

On March 1, 2021 and March 15, 2021, Plaintiff participated in two more mental health group sessions. Docs. 11-1 at 6, 7; 11-2 at 14, 17.

On March 18, 2021, Plaintiff was again evaluated by a mental health nurse practitioner, who noted:

> Risk: [L]ow. Safety: [L]ow. Continue on RTU. Continue Abilify and Buspar at current dose. Discontinue Lexapro. Start Paxil 20 mg PO at noon for depression. Increase Minipress to 3 mg PO QHS for nightmares. Decrease Benadryl to 25 mg PO BID for EPS. Continue individual and group therapies.

Docs. 11-1 at 7; 11-2 at 18.

On March 21, 2021, Plaintiff again attended a mental health group participation session, during which he was "alert and appeared calm" with "[n]o problems to report." Docs. 11-1 at 7; 11-2 at 20.

Defendant avers that he has at no time denied or delayed Plaintiff's mental health treatment; that Plaintiff is monitored frequently for his mental health needs at Bullock; and that at no time has Plaintiff's mental health treatment fallen below the standard of care of mental healthcare providers in the state of Alabama. Doc. 11-1 at 8.

In response to Defendant's filings, Plaintiff provided "the grievance [he] wrote on this issue," to which he did not receive a response; "the grievance appeal [he] wrote on this issue," to which he did not receive a response; and "mental health referral forms [he] submitted during the timeframe of the complaint." Doc. 15-1. Plaintiff's provided

9

grievance, dated February 5, 2021, makes no mention of Defendant Turner and is not signed by any prison official. Doc. 15-2 at 1. Plaintiff's provided grievance appeal, dated February 18, 2021, also makes no mention of Defendant Turner and is not signed by a prison official. *Id*. at 2. Plaintiff first mentions Defendant Turner on a Mental Health Referral Form dated February 4, 2021, which states in its entirety, "I need to see Mr. Turner—he said he would see me Friday, 2-5-21." *Id*. at 8. He again mentions Defendant Turner on a Mental Health Referral Form dated February 5, 2021, which states in its entirety, "I need to see someone today. Mr. Turner said he would see me today, Friday; but he didn't. I haven't spoken with a counselor since Mr. Aikens was here." *Id*. at 9. Neither Referral Form is signed by a prison official.

## IV. DISCUSSION

Although neither Plaintiff's Complaint (Doc. 1) nor his accompanying declaration (Doc. 1-1) explicitly asserts a legal claim, Plaintiff appears to believe that, based on his failure to receive one-on-one psychotherapy from November 2020 until February 2021, Defendant Turner acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment. Upon careful consideration of the parties' filings, and for the following reasons, the undersigned finds that judgment should be entered in favor of Defendant on this claim.

To succeed on an Eighth Amendment deprivation of medical care claim, a plaintiff must demonstrate at least two elements. First, he must demonstrate "an objectively serious medical need . . . that, if left unattended, pos[es] a substantial risk of serious harm." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (internal quotations and

citations omitted). "[A] serious medical need is [one] diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (citation omitted). Second, he must demonstrate that the defendant's response, or lack thereof, was "poor enough to constitute 'an unnecessary and wanton infliction of pain,' and not merely accidental inadequacy, 'negligen[ce] in diagnosi[s] or treat[ment],' or even '[m]edical malpractice' actionable under state law." *Taylor*, 221 F.3d at 1258 (quoting *Estelle v. Gamble*, 429 U.S. 97, 105–06 (1976)).

"[T]o show the required subjective intent to punish, [the] plaintiff must demonstrate that the [defendant] acted with an attitude of 'deliberate indifference.'" *Id.* (quoting *Estelle*, 429 U.S. at 105). A finding of deliberate indifference requires that the defendant "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists [and that he] also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *see also Campbell v. Sikes*, 169 F.3d 1353, 1363 (11th Cir. 1999) ("[A] prison official cannot be found liable under the Eighth Amendment . . . unless [he] knows of and disregards an excessive risk to inmate health or safety."). "When the need for treatment is obvious, medical care that is so cursory as to amount to no treatment at all may amount to deliberate indifference." *Simpson v. Holder*, 200 F. App'x 836, 839 (11th Cir. 2006) (quoting *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004)). However, a "simple difference in medical opinion" does not constitute deliberate indifference. *Simpson*, 200 F. App'x at 839 (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

11

Defendant Turner does not dispute that Plaintiff has demonstrated an objectively serious medical need. Doc. 11 at 10. Nevertheless, Plaintiff has failed to demonstrate that Defendant Turner was deliberately indifferent to that need. Construing the evidence in the light most favorable to Plaintiff and drawing all justifiable inferences in his favor, Plaintiff did not receive individual, one-on-one mental health counseling from November 2020 until February 2021. However, the record fails to demonstrate that (1) more frequent one-on-one sessions were medically necessary to treat Plaintiff's mental health needs; (2) Defendant Turner was aware Plaintiff was not receiving more frequent sessions; (3) Defendant Turner was aware of a substantial risk of serious harm to Plaintiff based on the frequency of his sessions; and (4) Defendant Turner was the individual responsible for ensuring Plaintiff received more frequent sessions.

First, the undisputed medical evidence demonstrates that, in December 2020, Plaintiff was seen by mental health professionals at least twice. On December 15, 2020, Plaintiff attended a group therapy session pertaining to his mental health (Doc. 11-2 at 4) and, on December 17, 2020, Plaintiff was evaluated by a mental health professional, who noted in Plaintiff's mental health treatment plan that, over the next six months, Plaintiff would utilize "medication and therapeutic techniques" to treat his reported depression (*Id*. at 3). Although there is no record of further therapy until February 18, 2021 (*Id*. at 5), later documents indicate that Plaintiff was prescribed Abilify (an antipsychotic medication used to treat numerous mental health conditions, including bipolar disorder), Buspar (an anxiety medication), Lexapro (an antidepressant), and other medications during that period (*see, e.g., id*. at 5). Then, from February 18, 2021 through March of

12

2021, Plaintiff's mental health appears to have been closely monitored by Bullock officials; his medications were regularly evaluated and tailored to his needs, he attended frequent group therapy sessions, and he was seen individually by mental health staff on multiple occasions. *Id*. at 5, 6, 8, 9, 10, 13, 14, 17, 18, 20.

As far as the Court can discern, the medical record makes no indication that Plaintiff required mental health counseling—individual or otherwise—on a more rigorous schedule to which Bullock officials did not abide. It further does not appear that Bullock officials ignored Plaintiff's mental health needs from November 2020 until the filing of this action in February 2021, as he took multiple medications, attended a group therapy session, and was evaluated by healthcare professionals during that time. As such, Plaintiff's desire for more frequent one-on-one counseling may constitute a "simple difference in medical opinion," which does not constitute deliberate indifference. *Simpson*, 200 F. App'x at 839 (quoting *Waldrop*, 871 F.2d at 1033); *see also Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985) ("Although [the plaintiff] may have desired different modes of treatment, the care the jail provided did not amount to deliberate indifference.").[3]

However, even assuming the treatment Plaintiff received during that period was no more than cursory and thus *may* constitute deliberate indifference, there is nothing in the

---

[3] *See also Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1271 (11th Cir. 2020):

> With respect to prisoners' medical care . . . we have held that the Eighth Amendment doesn't require it to be "perfect, the best obtainable, or even very good." [*Harris v. Thigpen*, 941 F.2d 1495, 1510 (11th Cir. 1991)] (quotation omitted). Rather, we have emphasized, "[m]edical treatment violates the [E]ighth [A]mendment only when it is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Id*. at 1505 (quotation omitted).

record to demonstrate that Defendant Turner was aware of, involved in, or in any way responsible for that treatment. Indeed, Defendant Turner specifically avers that he is not responsible for and has no control over Plaintiff's mental health treatment (Doc. 11-1 at 3), and Plaintiff has proffered no allegations or evidence to refute that fact. Notably, neither Plaintiff's Complaint nor his accompanying declaration state any factual allegations regarding Defendant Turner. *See generally* Docs. 1, 1-1; *see also Carey v. Mason*, No. 2:13-CV-705-MHT, 2016 WL 5844339, at *8 (M.D. Ala. Aug. 18, 2016) (granting summary judgment for defendant where plaintiff "ma[de] no allegations against him nor [did] he indicate this defendant was personally involved in the constitutional violations about which he complains").

    Rather, the only evidence Plaintiff has proffered pertaining to Defendant Turner is the February 4, 2021 and February 5, 2021 Mental Health Referral Forms attached to his response to the Special Report, which state, respectively, "I need to see Mr. Turner—he said he would see me Friday, 2-5-21" (Doc. 15-2 at 8) and "I need to see someone today. Mr. Turner said he would see me today, Friday; but he didn't. I haven't spoken with a counselor since Mr. Aikens was here" (*Id*. at 9). Neither of these Referrals put Defendant Turner on notice of a substantial risk of serious harm to Plaintiff, nor do they demonstrate that Defendant Turner was previously given such notice. Additionally, as neither Referral is signed by a prison official, there is no evidence that Defendant Turner actually received Plaintiff's requests. Without any evidence that Defendant Turner had actual knowledge of a risk of serious harm to Plaintiff, he cannot be held liable under the Eighth Amendment. *See Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008) ("No liability

arises under the Constitution for 'an official's failure to alleviate a significant risk that he should have perceived but did not.'") (quoting *Farmer*, 511 U.S. 825).

Thus, even accepting as true that Plaintiff did not receive one-on-one mental health counseling for several months, the undersigned cannot find sufficient evidence in the record upon which a reasonable factfinder could conclude that Defendant Turner was deliberately indifferent to Plaintiff's serious medical needs. Accordingly, Defendant Turner is entitled to summary judgment.

## V.   CONCLUSION

Accordingly, based on the foregoing, the undersigned RECOMMENDS that:

1.   Defendant's Special Report (Doc. 11), which the Court construes as a motion for summary judgment, be GRANTED;

2.   Judgment be ENTERED in favor of Defendant; and

3.   This case be DISMISSED with prejudice.

It is further ORDERED that, on or before **December 12, 2023**, the parties may file objections to this Recommendation. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made. Frivolous, conclusive, or general objections will not be considered. The parties are advised that this Recommendation is not a final order and, therefore, is not appealable.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waive the right of the party to challenge on appeal the District

Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except on grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1. *See Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE this 28th day of November, 2023.

/s/ Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE